May it please the Court, I am Kristen McCloudball, appearing on behalf of Petitioner Miguel Angel Uribe Andrade, and I'd like to reserve four minutes for rebuttal. In this case, Mr. Uribe, a long-time permanent resident of the United States, seeks review of the denial of his applications for protection against persecution and torture. Mr. Uribe sought protection as a member of a particular social group, Mexicans with mental health disorders characterized by psychotic features who exhibit erratic behavior. The BIA made two legal errors in finding that this group was insufficiently particular. First, the BIA incorrectly applied this court's precedent in Acevedo-Granados. And second, the BIA analyzed the particularity of that group definition piecemeal, exclusively addressing whether the phrase erratic behavior is sufficiently particular. And this court has jurisdiction over both of those questions. So is your, your position is that these are legal questions or applying a legal standard to undisputed facts? Yes, Your Honor, my position is that the, this court's on the merits exception is not raised in this case because there's jurisdiction under 1252 A2D, which covers both pure legal questions and under Guerrero-Lasprilla, mixed questions of law and fact application, a lot of undisputed fact. Are you, are you disputing any fact here? Uh, no, Your Honor, we're, uh, well, not with regard to the asylum and withholding claims. Um, Mr. Uribe also has cat claims, but there's review over factual questions separately. But as, as to asylum and withholding, your position is you're not challenging any factual finding, you're, you're making a legal argument? Yes, Your Honor. We're arguing that the, the BIA, BIA misapplied, uh, the precedent and misapplied the particularity standard to the facts and the record. And so, uh, even under a broad reading of, of what's at issue and the reframing that, uh, respondent did in, in their briefing, uh, that this is, uh, at the most application of law to undisputed facts. Um, so, uh, turning to the issue of, um, the, the piecemeal analysis of, of particularity, um, you know, the, the, uh, particularity standard requires that, uh, the, um, Mr. Uribe established a clear benchmark, uh, under which they could, uh, assess the group membership in the particular social group. Um, and he did that by, uh, pointing to a diagnosable medical condition, uh, and then, uh, limiting behavioral symptoms that, uh, apply specifically to that condition. So is it, um, is that sufficient? And if we compare this to, uh, Acevedo Granados, where the petitioner actually had been diagnosed with the, uh, you know, I think it was an intellectual disability, whereas here, I don't believe there is any diagnosis in the record. Oh, uh, Your Honor, there is, there is a diagnosis in the record. Uh, Mr. Uribe, who, uh, was not, uh, was found not competent to appear in immigration court, underwent a forensic medical exam, uh, where he was diagnosed with major depression with psychotic features, uh, which falls within. But there's no, um, diagnosis of mental health disorders. I mean, the, the BIAs into, in Acevedo, we were struck by the, the actual description of his group included a, uh, intellectual disabilities, which was, had a clinical definition and a documented clinical diagnosis. But there wasn't anything like that in the actual description of the PSG here. Um, Your Honor, the, uh, PSG, uh, as I said, um, incorporated mental health disorders with DSM-5, um, referring to the diagnostic criteria that were used in the forensic mental health, uh, examination in, in this case. Right, but it seems like the BIA's difficulty here was with the, the erratic behavior part of this. Yes, Your Honor, that, and that's what's before the court here. Uh, the, the BIA exclusively found that the, uh, description, the, the particular social group was not sufficiently particular because it included the phrase erratic behavior. And that's the concern, right? Because Mr. Uribe was not arguing that, uh, the group is particular because it, it, uh, included the phrase erratic behavior sort of as a free, free floating concept, uh, for anybody walking down the street, but rather as this particular symptomology of a diagnosable medical condition, which is necessarily going to be different. And so looking at whether erratic behavior as a phrase separated from the definition is sufficiently particular is a misapplication of the particularity standard, which, which is looking for a benchmark for the group in general. Well, how, I mean, part of the problem with what the BIA found was that this term erratic behavior just wasn't defined in the record. It wasn't something that he specifically had been diagnosed with. The BIA's concern is in light of that, how do we know necessarily who is in this proposed group and who is not? Sorry, uh, Mr. Uribe's position is that, uh, the entire social group does not need to be the specific diagnosis that, that someone received, right? The, the particular social group isn't a description of him as a person. It's a group that he falls within to because of his diagnosis. No, but, but the, this is part of the group definition, right? And it seems to me that if you didn't have this phrase, right, who exhibit erratic behavior, there's going to be a difficulty with the social distinction piece of this, right? I think you need something like this in this group to get past that prong. The problem is then creates an issue with particularity and whether or not erratic behavior could be sufficiently particular with the right record. I think the BIA's concern here was that just on this record, it wasn't. The BIA's concern is that there wasn't a definition of erratic behavior full stop as a concept on its own. The BIA did not look whether there was, look for a sufficiently particular definition of the group as a whole. And so that's why we're seeking remand for the board to address particularity, not just of erratic behavior, because it does, it's not intended to be a concept separate from describing the symptoms of this disorder, um, uh, mental disorders with psychotic features. And so, uh, by cutting up, right, the, the definition and looking at only part of it, um, the BIA isn't actually analyzing whether the group as a whole is particular, it's analyzing whether a different group, people with erratic behaviors would be sufficiently particular. Um, and so, but the, the, um, the erratic behaviors narrowed a very particular definition of intellectual disabilities, which had been clinically defined. But there's no argument that mental health disorders, which is extremely general, is, um, specifically defined or clinically diagnosed. So erratic behaviors can't really narrow that. That seemed to be what the BIA was worried about. Well, your honor, the, the underlying medical condition isn't just mental health disorders, it's mental health disorders with psychotic features, uh, which is a diagnosable term within the DSM. Uh, and that is perhaps why, uh, while the IJ found that term insufficiently particular, the BIA did not. And so, that wasn't what he was, uh, diagnosed with. I mean, the, the diagnosis does not say mental health disorders characterized by psychotic features. It says, uh, major depression, moderate with psychotic features, which is a different diagnosis. Which would fall within mental health disorders with psychotic features. Right, so mental health disorders is extremely broad. It could be anything. I mean, I don't see how that helps, um, with sufficient particularity. So, the BIA had to look for something else to identify sufficient particularity, and said erratic behavior was not enough. I don't see, um, uh, how that's similar to acetatogranados, where there was a specific, uh, narrowing diagnosis, and erratic behavior has been narrowed it further. Uh, Your Honor, I would argue that psychotic disorders, uh, that, um, psychotic features does serve that purpose, right? It has abnormalities, uh, in, in, uh, delusions, hallucinations, disorganized thinking. Um, and, uh, that, that, that fits with the specific diagnosis that, uh, Mr. Uribe received in this case. Um, and, uh, uh, you bring up acetatogranados, uh, which I think is applicable here in that, uh, the BIA, uh, this court in, in that case, um, found that there was sufficient particularity because of this diagnosis. Again, there's again a diagnosis in this case. Um, and then, uh, you know, allowed the, um, erratic behavior to be a limiting feature. And that's the type of analysis that the, that the board should have conducted here. It should have followed the, um, precedent decision outlining the way this type of, uh, particular social group should be analyzed, where it's not simply a set of distinct traits, but rather related to each other within the context of this diagnosis. And as this is a conceptual matter, I have some difficulty with that because it's part of the group definition. And so if, if you can consider it within the context of the whole, I don't really read the BIA to be doing anything other than that, but to be finding a particular problem with one part of it, that seems to be a legitimate form of analysis. Well, Your Honor, I believe that what the BIA is doing was looking for a definition, right? It was looking for the specific words, erratic behaviors to be defined in the record. And our argument is that that's not necessary. Rather, what's necessary in the record is establishing that the full group, uh, is, is sufficiently distinct to satisfy particularity, right? So if you're looking at what erratic features are in the context of someone who's experiencing hallucinations and disorganized thinking and the symptomology of this, of this condition, that is not going to need the same sort of Webster's dictionary definition that you would if I was just saying, I think that person walking down the street is behaving erratically, right? It's, it, it applies within a context of the, um, of the diagnosis. So is, uh, is the, the phrase erratic behavior necessary to define the group? In other words, if the group had been defined as individuals with, uh, mental health disorders with, um, psychotic features, was that sufficient? Uh, well, your honor, at this stage, we can't go back and, and redefine the group, but the, the, well, I understand, but I guess my point is if the term erratic behavior is not defined anywhere, then in essence, that's what we're looking at. If you excise those words, because they're not defined to try to set this group apart. So there's particularity. Again, I, you know, I think that had the BIA conducted the analysis that I'm talking about, there is information in the record about the way that Mexican society perceives, um, psychosis and particular symptomology that I think satisfies, includes erratic behavior. And, and I don't think that asking for a separate definition here, um, is, is what's called for in the particularity analysis, right? It's not sort of splitting it up and looking at just one part of it. Um, but the BIA didn't conduct that analysis. And so, uh, we would ask that the court remands for it to do so. And, um, so no other questions. I'll save the remaining time for a while. All right. Thank you. Thank you. May it please the court, Jacqueline Hagner on behalf of the attorney general. This court should dismiss in part and deny in part the petition for review. This court should hold that the on the merits exception is clearly irreconcilable with the Supreme court's decision in Nasrallah. In the concurrent opinion in Pinchakoff, Judge Graber distills the criminal jurisdictional bar Why is this? I mean, the petitioner says this is not a factual challenge. It was a legal challenge. So why is that wrong? It is a factual challenge, your honor. Essentially what we're looking at here is a failure of proof. So the agency, uh, there's no dispute that the agency clearly set forth the law of what constitutes particularity. The problem is that the agency looked at the record and found that in the record, there was not sufficient evidence. Clearly defining, uh, or clearly setting forth the benchmark of the boundaries of the term erratic behavior, uh, because it is a failure of proof. That is a factual determination, which the criminal jurisdictional bar precludes review. We've treated the cognizability of a proposed social group as legal questions. Seems, you know, sometimes this can be reframed in both ways, but it does seem to me, this presents a coherent group and the BIA made legal errors in how it evaluated that. Yes, your honor. I have two responses to that. I agree that this court treats cognizability as a legal question. However, this court treats particularity as a factual determination. And I believe we cite to Santos Ponce in our brief to support that. And the second point on that, I think what would really help here is to, um, examine, uh, what the board standard was that they, that they applied that standard. And that truly that we don't just, there was no dispute over the standard. So Acevedo Granados, the proposition of that case is that just because a term in a particular social group, perhaps a late person doesn't understand, but if there is a well-established medical definition of that term in the record, then, then it is particularly defined. And in Acevedo Granados, I believe in my reading of that case that there was, there was record evidence, uh, the DSM-5 definition of intellectual disabilities. We simply do not have that in this case. And so as to any part of this or just as to erratic behavior, erratic behavior, your honor, I don't, I, um, it is an interest. I understood that there was a hypothetical question asked in regards to the other terms of the, um, of the particular social group. It's really hard to, to examine that because the agency didn't fully, didn't, didn't fully examine all the terms. The agency decision truly rested on erratic behavior. In fairness, uh, I think it was page 411 of the record. So this is the, uh, expert medical examiner's, uh, report of, of petitioner. She does, um, I'm not sure if it's a diagnosis, but in the very least an opinion that he has a DSM-5 psych, um, major depressive disorder with, I believe she uses the term psychotic features. And so the question to make, or I'm not sure if that's your question is that that would satisfy particularity. Um, the agency simply didn't reach that. I think that's a good question and perhaps something that, uh, could have been examined, but the agency was not required to reach that. And they did not because, uh, they saw that erratic behavior was a term of the social group and simply there was no evidence, no mention of the words erratic behavior in the record. And that simply just can't support the social group. And again, that is a failure of proof. And for that reason, it is a factual determination, which the criminal jurisdictional bar concludes. Is this argument, um, consistent with the fourth circuit's decision in TEMU or are you somewhat disagreeing with that? Right. So our brief clearly disagrees with the fourth circuit decision in TEMU. I think it's really hard to compare those two cases. These are not apples to apples. It is a very different record evidence. Um, I think what I found most compelling in TEMU is, uh, that there was expert testimony regarding, um, I think that Tanzania was the country, um, and it, uh, erratic behavior was one of the terms and it was, and I forgot the other terms, but some other mental health disorder with erratic, um, erratic behavior. And the expert testified that look individuals in Tanzania with these, um, with these diagnoses are, uh, are basically looked at as contagious and, um, and possessed. Um, and the important takeaway there is that there was a discussion of erratic behavior by a medical expert on the record. And that was a term of the social group in TEMU. Um, so factually, these cases are very different. Legally, they're different too, because, um, my understanding of fourth circuit law is that they treat particularity as a legal question. And again, this court treats it as a factual question. Uh, but even the fourth circuit's decision stated that it found the erratic behavior to be subjective and not well-defined, but then went ahead and found that the, the PSG was cognizable. I just find that to be a very hard case to reconcile, uh, and to stand for any type of case. And so I would like to go back to the question of jurisdiction. Um, again, as Judge Graber pointed out, there are two important questions when you're dealing with a criminal jurisdictional bar. First is, was the non-citizen charged with a relevant criminal conviction, uh, was, uh, charges removable as a, under a relevant criminal conviction? And then was that charge sustained? If so, then the criminal jurisdictional bar applies. The problem is that the on the merits exception, uh, uh, does not follow that reasoning. Uh, the on the merits exception says that we can reach the merits of your claim as long as the final reason for the order of removal is the criminal conviction. But that's clearly incorrect as, um, as Judge Graber pointed out in the concurring opinion. And then this later proved to be incorrect by Nasrallah. Now what Judge Graber points out is that what happens with the on the merits exception is that, um, it misread the terms by reason of in the criminal jurisdiction. I mean, even if Judge Graber, uh, makes some persuasive points, you know, but for Nasrallah, we would be stuck with on the merits just as Judge Graber was in that case. So I think your argument depends, even assuming we agree with you that this is a factual challenge, what would get you over the circuit precedent would have to be Nasrallah. I couldn't be arguing that the on the merits exception is just wrong because the three-judge panel were bound by that unless there's intervening law. I do agree with you, Your Honor, that under Miller v. Ghani, this needs to be clearly irreconcilable. Um, understanding that Judge Graber alone can't get you over that bar, and I will address how Nasrallah gets you over the bar. I do still think that, um, Judge Graber's concurring opinion pulls the thread on the on the merits exception. I will spare you of going through all the case precedents leading up to Payne-Shankoff, but she does it for you in the concurring opinion. And she clearly exposes how the on the merits exception came to be and that it is flawed, fundamentally flawed. Does any other circuit have that exception? No, Your Honor, only the Ninth Circuit has this, which is a relevant point, perhaps. I understand just because everybody's doing it doesn't mean the Ninth Circuit does it. That's not clearly a legal reason for you. But I do think that that is a very important consideration, that Ninth Circuit is the only circuit. Now, agreeing with you, Judge Rest, that Nasrallah is what gives you the reason now to find clearly irreconcilable because this is your higher court authority. It's as simple as considering the language of, so by reason of, addressing Payne-Shankoff and the on the merits exception, that reasoning is that the by reason of language in the criminal jurisdictional bar applies to the final order of removal. As Judge Graber pointed out, that's, they misread it. And then Nasrallah comes forward and Nasrallah clearly explains that that's a misreading because as Nasrallah says, the criminal jurisdictional bar includes all matters in which the validity of the final order of removal is contingent. In other words, if the immigration judge sustained the charge of removability, that is a matter in which the validity of the final order of removal is contingent, regardless of whether the agency reached the merits of the asylum claim. And that is how they are clearly irreconcilable. In other words, Nasrallah undercut the theory and reasoning of the on the merits exception. In order for this court now to move forward and still apply the on the merits exception, it would have to ignore the language of Nasrallah. Quite frankly, that language in Nasrallah is throughout the opinion. And most importantly, the first sentence of the last paragraph, it concluded with reminding the courts that the criminal jurisdictional bar applies unless it's a legal constitutional challenge. Um, so again, the court would have to ignore that an immigration judge sustained a charge of removability based on a conviction or stated differently. The court would have to say that just because the immigration judge sustained that charge of removability based on a relevant conviction, that that is not a matter in which the validity of the final order of removal is contingent. That just doesn't make sense. It's clearly irreconcilable. And that is why this court should find that the on the merits exception has been overruled by the Supreme Court's decision in Nasrallah. If there are no further questions, uh, uh, for foregoing reasons and their reasons before you sit down on the, um, going back to erratic behavior. What's your argument as to, um, why this case is different than Acevedo? It's, it's a factual issue, your honor. Basically the, the, the record in Acevedo contained evidence defining the term erratic, uh, behavior. I'm not talking about Tima. This is our case in Acevedo. Um, yes, your honor. That's, uh, I believe Acevedo Granados. Right. I don't recall Acevedo saying a whole lot about erratic was really more focused on, um, the first part of the definition. Oh, intellectual disabilities. Right. You're absolutely right. Your honor, the court did not reach erratic behavior. It was intellectual disabilities. The reasoning is still identical, meaning that there was no evidence in the record defining intellectual disabilities. Or excuse me, there was, I'm sorry, there was evidence. That's, that's the contrast. This court found in Acevedo Granados, this term of the PSG, uh, in that case, it was intellectual, intellectual disabilities, uh, was defined under the DSM-5 in the record. And that's the contrast here is that we just simply have zero mention of the term erratic behavior. Uh, I will conclude then with, um, again, in Judge Graber's concurring opinion, she said, uh, she urged this court to revisit. Those were her words. She urges this court to revisit the on the merits exception in the appropriate case. Um, I offer to you that this is the appropriate case. Thank you. Thank you. Uh, thank you. I'd like to make, uh, three quick points. Um, first, uh, as to Acevedo Granados, uh, you're right, Your Honor, that the, um, argument, the same argument was made there that intellectual disability was insufficiently it could render, uh, the particular social group, uh, not sufficiently particular. Um, and had the court believed that to be true, had the reasoning of Acevedo Granados allowed that argument to prevail, there would not have needed to remand because regardless of the evidence regarding intellectual disability, erratic behavior on its own would have been enough to knock out the particularity of that group. It seemed like Acevedo Granados really grappled with that part of the definition. Uh, it wasn't the focus of the, of this court's decision, but it was put to the court, uh, as, as a reason to find the, uh, uh, group insufficiently particular. Um, additionally, uh, in Timu, uh, which you discussed, uh, earlier, um, it is true that the fourth circuit said that, uh, erratic behavior was fuzzy on its own. And that was one of the reasons why it indicated that it was necessary to look at the group as a and not to split it into two, which is essentially what the court did, uh, what the BIA did here. Uh, although only followed up with half of it, right? It just didn't do the part regarding the actual diagnosable medical condition. Um, and finally, uh, Your Honor, uh, I would rearticulate that this is not the case to address Nasrallah's impact on the, on the merits exception. Uh, but if this court disagrees, I will note that, uh, respondent in that case specifically asked the Supreme Court to address the, on the merits exception. It declined to do so and stated very explicitly that it was addressing the narrow issue of, uh, the availability of factual review for cat orders, uh, and did not address, um, sort of what other types of factual review. It specifically decided not to address what other types of factual review might be available. Well, I mean, it, it does pretty clearly say that for something that's within a final order of removal that merges into it, there's only a legal challenge. Uh, it says that the parties agree on that and it's not before the court. What's before the court is cat. It specifically, uh, states that it's not addressing whether, uh, such review is available in withholding statutory withholding claims. Uh, and it provides a number of reasons sort of supporting why, uh, factual review, uh, you know, this wouldn't lead to floodgates sort of because there's other bars to review of certain types of relief, uh, under 1252A2B, which does not cover the relief that we're dealing with here. Thank you. Thank you, counsel, both for your arguments and, um, Ms. McLeod-Ball, thank you for your service in providing program representation. We appreciate that. Thank you. This case is submitted.
judges: IKUTA, BADE, BRESS